# Review of Agency Schedule C Appointments by the Executive Office of the President

The Executive Office of the President may involve itself in reviewing an agency's proposed Schedule C appointments, notwithstanding the President's general delegation of his authority in this area to the Office of Personnel Management, by virtue of the President's continuing responsibility for supervising the performance of Executive Branch officials.

The Executive Office's power to review Schedule C appointments may be limited in the case of the independent agencies, or when the organic act of an agency specifically precludes review by the Executive Office.

January 27, 1982

## MEMORANDUM OPINION FOR THE ASSISTANT COUNSEL TO THE PRESIDENT

This responds to your request for a review of the present method by which the Office of Personnel Management (OPM) authorizes those positions of a confidential or policy-determining character known as "Schedule C" positions. 5 C.F.R. § 213.3301–.3399 (1981). You have asked whether it is proper for the Executive Office of the President (Executive Office) to involve itself in the review of Schedule C nominees. We believe that this practice is permissible, if the procedure is clarified as outlined below.

## I. Background

The President is charged with general oversight of the civil service. 5 U.S.C. §§ 3301, 3302 (1976).[1] The President may delegate to the Director of OPM general authority for personnel management, 5 U.S.C. § 1104(a)(1) (Supp. III 1979), and he has done so. Exec. Order No. 9830, 3 C.F.R. (1943–1948 Comp.) 606; Exec. Order No. 9973, 3 C.F.R. (1943–1948 Comp.) 710. This general delegation, however, does not remove the President from active involvement in personnel matters. He continues to exercise his authority in this area by, for example, issuing orders concerning who may be admitted to the civil service

---

[1] *See generally Mow Sun Wong v Campbell*, 626 F 2d 739 (9th Cir 1980), *cert denied*, 450 U S. 959 (1981) (exclusion of aliens from civil service). This "clear statutory authority" can be exercised even when OPM has made a contrary determination

114

system, *see supra* n.1, and which positions will be placed in the excepted service.

Federal civil service positions are classified into several groups. The President prescribes rules, 5 U.S.C. § 3302, which cover the "excepted service"—those civil service positions which are in neither the competitive service nor the Senior Executive Service. *Id.* § 2103(a); 5 C.F.R. § 213.101 (1981). Schedule C positions, a subcategory of the excepted service, 5 C.F.R. § 213.102 (1981), are "positions of a confidential or policy-determining character," such as Special Assistants and confidential secretaries. *Id.* § 213.3301. There are no merit qualifications imposed on Schedule C positions, as there would be if they were in the competitive service, and there is virtually no protection from removal.

Under President Carter, OPM had delegated to each agency the authority to establish those Schedule C positions it required. These delegations were rescinded on July 31, 1981. Federal Personnel Management (FPM) Bulletin No. 213–45, July 31, 1981, at 3.[2] Implementing regulations were issued in December. 46 Fed. Reg. 58271 (1981) (*to be codified in* 5 C.F.R. § 213.3301b).[3]

At present, an agency that wishes to establish a Schedule C position first submits the name of its nominee to the Executive Office for clearance. After it receives Executive Office clearance or while the name is still under review, the agency applies to OPM for permission to establish the position. This application for permission must contain a description of the job to enable OPM to determine whether the proposed position is of a confidential or policy-determining character. The name of the nominee must also accompany the application to OPM. This information is placed on an OPM computer for recordkeeping purposes and can apparently be reviewed from a terminal in the Executive Office. If the Executive Office, after calling up the names on its terminal, does not approve of an applicant, it informs OPM that it cannot support the application for the Schedule C position.

## II. Analysis

Under the current framework of statutes, regulations, and executive orders, OPM's responsibility in this area is relatively straightforward. It must determine whether the agency's description of a proposed Schedule C position meets the criteria of a confidential or policy-determining job, and thus, whether a job may be placed in the excepted service. That is, OPM "decides whether the duties of any particular position are such that the excepting authority is applicable to the position." FPM Basic Inst. 262, ch. 213, subch. 3, § 3–1(c)(1981). Satisfaction of these criteria may fulfill OPM's institutional needs, but it does not mean that the Executive Branch's inquiry is at an end. There is an additional, and legiti-

---

[2] "Effective immediately, all delegations to agencies to establish Schedule C positions are suspended Any position currently excepted by OPM under Schedule C at GS-15 and below, or any position established under prior delegation agreements, is revoked immediately upon the position becoming vacant." *See also* 5 C F R. § 6 7 (1981)

[3] Prior to the revocation of authority, the agency had up to 120 days to fill a vacant Schedule C position before it reverted to OPM. 5 C F R § 213 330lb(a),(b) (1981)

mate, interest in ensuring that persons placed in Schedule C positions are appropriate individuals to hold confidential or policymaking positions.

Schedule C positions serve as a complement to the President's authority over his own appointees. The expressly confidential or policymaking nature of these jobs indicates their sensitive nature. 5 C.F.R. § 213.3301 (1981).[4] These positions have always been used as a way to provide trustworthy aides to policymakers and they were, in fact, conceived for that very reason. Exec. Order No. 10440, 3 C.F.R. (1949–1953 Comp.) 932.[5] The Executive Office has a proper role in the filling of these positions, and has always involved itself, although the extent of each Administration's supervisory role has varied.

In order to ensure that the Executive Office review is properly conducted, certain procedures should be clarified.

First, we believe that the President should, if he has not already done so, instruct the heads of all Executive Branch agencies that he wishes them to consult with him or the Executive Office about Schedule C nominees, preferably before an application is submitted to OPM. This directive is necessary in order to establish that it is he who wishes to assert authority over the Schedule C positions. Normally the judgment of a Schedule C nominee's fitness rests entirely with the appointing officer, *see infra*, and the Executive Office cannot, on its own, involve itself with this decision. The President—not his subordinates—should therefore expressly direct the heads of all Executive Branch agencies to consult with the Executive Office before they submit an application to OPM for a Schedule C position.

Second, the directive should be clear in stating that the President is requiring that the executive agencies *consult* with him prior to making a Schedule C appointment. In most cases, the appointment power is vested in the head of the agency or one of his subordinates, not with the President.[6] The heads of the agencies are vested with the authority to appoint individuals even if the President disapproves, although the President has ample authority to punish disobedient agency heads through dismissal from their own jobs.

Third, if the President wants to restrain OPM from acting on agency requests for Schedule C positions before the Executive Office has an opportunity to consult with the agencies regarding the nominee, we believe that he should modify Exec. Order No. 10440, *supra*. Under the Order, OPM determines whether a position is of a confidential or policymaking character. The Order does not say that authorization is dependent upon review by the Executive Office. In order to require OPM not to take final action on an application prior to the

---

[4] *See Leonard* v *Douglas,* 321 F.2d 749, 751–53 (D C Cir. 1963) (removal of Schedule C for incompatibility with his new superior)

[5] Creation of Schedule C positions "was a long overdue step toward a more precise identification of policy-making posts unsuitable for inclusion in the permanent service." Van Riper, *History of the U S. Civil Service* 495–96 (1958) *See also* Cooke, *Biography of an Ideal* 102 (1958); Mosher, *Democracy and the Public Service* 166 (1968). ("It may well be that the political executives are *the* crucial element in the maintenance of democratic control over a public service which is increasingly professional and 'careerized.' They are, or can be, the true nexus between politics and administration.")

[6] *See National Treasury Employees Union* v. *Reagan,* 663 F 2d 239 (D.C Cir. 1981) (Appointments can only be revoked by the appointing official, which in almost all cases would not be the President.)

Executive Office review process, there should be a modification of the present Order. 44 U.S.C. § 1505 (1976). The new order would tell OPM not to authorize a new position until the Executive Office notifies OPM that it has consulted with the agency involved. Once this consultation had occurred, OPM would authorize the slot if it met OPM's criteria.

Finally, we understand that the Executive Office has access to the computer on which OPM stores its data. If OPM's files are retrieved by reference to the individual applicant's name, it is impermissible for OPM to disclose that record to any other agency. 5 U.S.C. § 552a(b) (1976).[7] This may be overcome by obtaining the prior written consent of the nominee, *id.,* such as is now provided on Standard Form 171. In addition, OPM could alert the Executive Office that it has received an application for a certain position—without giving the name of the nominee. This will alert the Executive Office if it has not yet been told by the nominating agency.

A caveat to our advice concerning the exercise of authority by the Executive Office relates to the independent regulatory agencies. The President's authority to persuade the heads of Executive Branch agencies to comply with his request is bottomed on his ability to enforce compliance by virtue of his removal power over recalcitrant Executive Branch officials. He does not have that power to the same extent over members of many of the "independent" agencies. *Humphrey's Executor* v. *United States,* 295 U.S. 602 (1935). If he does not have the authority to have the name submitted to him for review, he does not have the authority to prevent OPM from authorizing the positions pending consultations or to insist that the appointing authority select a particular individual.[8] He can, however, request the agency to consult with the Executive Office.

There are situations where the organic act of an agency specifically precludes review by the Executive Office. The organic act establishing the Consumer Product Safety Commission, for example, has such a provision.

> The appointment of any officer (other than a Commissioner) or employee of the Commission shall not be subject, directly or indirectly, to review or approval by any officer or entity within the Executive Office of the President.

15 U.S.C. § 2053(g)(4). We would advise OPM to review the underlying statutes of each agency requesting a Schedule C position in order to ensure that such provisions are not overlooked.[9]

### III. Conclusion

Some confusion seems to have arisen in this problem because of what some may perceive as OPM's "subservience" to the White House. We see no legal

---

[7] Note that 5 U.S.C. § 552a(c) (1976) requires that a record be kept of disclosures that are made

[8] The appointment power in these agencies sometimes rests with the chairman, a position that is designated by the President. This authority could be useful in obtaining compliance with his request

[9] We have reviewed the organic acts of all the independent agencies listed in the United States Government Manual and this is the only such provision that we have located. There may be others, however, that our search has not uncovered.

117

problem, however, with Executive Office review of nominees' names under the circumstances described above.

ROBERT B. SHANKS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
